## DOWNS v. ANDREWS.

Court of Appeals of District of Columbia.
Submitted March 13, 1928. Decided
May 7, 1928.

No. 2044.

**1. Patents ⬯⬯106(3)—In interference proceeding, junior party has burden of proving case by preponderance of evidence.**

In an interference proceeding before the Commissioner of Patents, burden rests on junior party to prove case by preponderance of evidence.

**2. Patents ⬯⬯113(7)—Great weight will be given to practically concurring decisions of Patent Office, particularly when reviewing testimony relating to technical issue.**

Court of Appeals of the District of Columbia will give great weight to practically concurring decisions of the Patent Office, especially so when reviewing force and effect of testimony relating to technical issue.

**3. Patents ⬯⬯91(4)—Senior party held properly awarded priority for process for fractional sublimation of solids.**

Senior party held properly awarded priority as to invention relating to process for fractional sublimation, whereby mixture of several substances might be vaporized into a flowing current of heated gas and passed through a plurality of cooling zones, in which vapor condenses to a solid state.

Appeal from the Commissioner of Patents.

Interference proceeding between Charles R. Downs and Chester E. Andrews. Decision for the latter, and the former appeals. Affirmed.

See, also, 25 F.(2d) 218.

W. B. Morton, of New York City, and R. K. Stevens, of Washington, D. C., for appellant.

B. G. Foster, of Washington, D. C., and R. A. Norton, of New York City, for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. [1] Andrews is the senior party, his application having been filed on February 27, 1918. He has taken no testimony, but relies upon his filing date for conception and constructive reduction to practice. Downs' application was filed on July 2, 1919, and a division of it was filed on April 4, 1921. A patent was granted to Downs on August 14, 1923, but the claims of the patent, as well as of the divisional application, are involved in this interference. The burden rests upon Downs to prove his case by a preponderance of the evidence. Downs relies for his proofs upon testimony taken by him in another case between the same parties, which was made part of the record by order. The controlling question is whether that testimony is sufficient to discharge the burden of proof which rests upon Downs in the present case.

The invention relates to a process of fractional sublimation whereby a mixture of several substances may be vaporized into a

flowing current of heated gas and passed through a plurality of cooling zones, maintained at successively decreasing temperatures, in which the vapor condenses to a solid state; that is to say, the process provides that a mixture of vaporizable solid materials shall be melted and the mixture then vaporized into a flowing current of inert gas, such as air, and the vapors then passed into and through a series of cooling and crystallizing compartments in which the vaporized material having the highest boiling point crystallizes in the first compartment, and the substances having lower boiling points severally condense in the succeeding compartments as the gas currents pass successively through the several compartments. The process may be called a fractional sublimation of solids, and is comparable to the fractional distillation of liquids.

The issue in interference is defined in nine counts, of which counts 1 and 5 are illustrative, reading as follows, to wit:

"1. The process which comprises subliming a mixture containing a polynuclear aromatic hydrocarbon and an oxidation product of the same in a hot gas and slowly cooling the mixture in successive stages."

"5. A method of separating oxidation products of condensed benzene nuclei hydrocarbon from other materials contained in the oxidation product, which comprises vaporizing into a gas current at a temperature above the melting point of the highest melting ingredient of the mixture a part at least of such mixture, and fractionally condensing into crystals at different locations the ingredients from such gas current in the inverse order of their volatility."

The Examiner of Interferences held that Downs' testimony was sufficient to establish his priority as to claims 5, 6, and 8, but not to any of the other claims. The Examiner accordingly awarded priority to Downs as to claims 5, 6, and 8, and to Andrews as to claims 1, 2, 3, 4, 7, and 9. Cross-appeals were taken from this decision, and the Examiners in Chief reversed it in part, and awarded priority to Andrews as to all

of the claims in issue. This decision was affirmed by the Commissioner of Patents, and the present appeal was taken.

The decisions of the Examiners in Chief and the Commissioner are both placed upon the ground that Downs' testimony fails to disclose a reduction to practice of the invention in issue, inasmuch as each count contains limitations not disclosed thereby; the tribunals holding that every limitation in a count must be regarded as material. In count 1 the mixture which is to be treated is defined as "mixture containing a polynuclear aromatic hydrocarbon and an oxidation product of the same"; in counts 2 and 3 similar provisions appear; in count 4 specific mention is made of the separation of phthalic anhydrid from naphthalene at a temperature of about 200°C.; and similar specifications and limitations appear in the remaining five counts of the issue. The Board of Examiners in Chief and the Commissioner agree that Downs' evidence fails in respect to all of these limitations, while the Examiner of Interferences holds likewise as to 6 of the 9 counts.

It is contended in behalf of Downs that "all the conditions and limitations set forth in the claims were either testified to by the witnesses directly as taking place in the plant manufacture and laboratory operations which they described, or are the necessary and inevitable results of performing the process described in the apparatus described." This contention, however, was held below to be untenable; and that Downs should have proven his process in the treatment of the specified materials in the specified manner, and that he had failed to do so.

[2, 3] We think that great weight should be given by us to the practically concurring decisions of the Patent Office, and especially so when reviewing the force and effect of testimony relating to a technical issue such as this. We have also examined the evidence, and find that the conclusions reached below are justified by it.

The decision of the Commissioner of Patents is accordingly affirmed.